UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ROGER J. TRAVERSA        *
   Plaintiff          *
               *
   v.             *   CIVIL NO. L-10-442
               *
HENRY B. FORD, et al.       *
   Defendants        *
            *******

MEMORANDUM

  This case arises from an employment dispute. Plaintiff Roger J. Traversa was employed by Northrop Grumman Systems Corporation ("Northrop Grumman"). In 2004, Northrop Grumman terminated Traversa, citing his frequent late arrival time, sleepiness during meetings, and deteriorating work product.

  After his termination, Traversa filed a complaint with the Maryland Commission on Human Relations ("the Commission"). Traversa claimed that Northrop Grumman discriminated against him because he suffered from sleep apnea. While his administrative complaint was pending, Traversa consented to arbitration with Northrop Grumman, and the Commission postponed its investigation.

  After Northrop Grumman prevailed at arbitration, the Commission resumed the investigation. Ultimately, the Commission concluded that Traversa was not disabled and, therefore, that he had not been subject to discrimination. In the instant suit, Traversa alleges that five employees of the Commission (collectively, "the Defendants") violated his civil rights and acted negligently by delaying investigation of his complaint and concluding that he was not disabled.

Now pending is the Defendants' motion to dismiss. (Docket No. 11). No hearing is necessary to decide this matter. See Local Rule 105.6 (D. Md. 2008). For the reasons stated herein, the Court will, by separate Order of even date, GRANT the motion. The Clerk is DIRECTED to CLOSE the case.

**I.     Background**

The Court is well-acquainted with the facts of this case. Proceeding pro se, Traversa has thrice filed suit in this Court to challenge the arbitrator's decision.[1] Because Traversa is barred from further challenging the arbitrator's award, he has turned his sights on a new target, the Maryland Commission on Human Relations. Traversa alleges that the Commission, its Executive Director, its Deputy Director, and three members of its investigatory staff violated his civil rights, and acted negligently and with malice, by delaying investigation of his complaint and concluding that he was not disabled.

On March 2, 2010, the Defendants filed a motion to dismiss. Docket No. 3. Traversa voluntarily dismissed the Commission, conceding that it is immune from suit under § 1983. Docket No. 6. Nevertheless, he opposed the Defendants' motion and filed an Amended Complaint against the five Commission employees in their individual capacities. The Amended Complaint contains five counts, as follows: Discrimination Based on Race (Count I); Discrimination Based on Disability (Count II); Conspiracy to Deprive of Civil Rights (Count III); Gross Negligence (Count IV); Professional Negligence (Count V), and Gross Negligence in Supervision (Count IV). Docket No. 7.

---

[1] The Honorable Richard D. Bennett dismissed Traversa's first two complaints, holding that the arbitrator had acted admirably and not disregarded controlling law. See Traversa v. Northrop Grumman Systems Corp., Nos. RDB-06-1196, RDB-07-1079. The Honorable Catherine C. Blake summarily dismissed Traversa's third suit and placed Traversa on notice that he could be subject to sanctions for filing actions related to the arbitration proceedings previously addressed by the Court. See Traversa v. Vonn Kann, No. CCB-08-1566.

The Defendants filed a second motion to dismiss on April 12, 2010. Docket No. 11. The Court informed Traversa in writing that failing to respond to the motion could result in dismissal of his Complaint. Docket No. 12. Although Traversa filed an opposition to the Defendants' first motion to dismiss, he has not yet responded to the pending motion or otherwise communicated with the Court. The motion could be granted on this ground alone. Nevertheless, the Court will review the Amended Complaint to determine whether it has any ostensible merit.

## II. Standard

To survive a Rule 12(b)(6) motion, a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The Court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).[2]

## III. Discussion

The relevant allegations in Traversa's lengthy Amended Complaint are fully set forth in the parties' briefs. The Court will evaluate the Complaint on a claim-by-claim basis.

---

[2] Traversa's claim that the Court may not apply the pleading standards set forth in Twombly and Iqbal is unavailing. It is now well established that these standards apply to all civil cases, including ones brought by pro se plaintiffs. See Dolgaleva v. Virginia Beach City Public Schools, No. 08-1515, 2010 WL 325957 (4th Cir. Jan. 29, 2010) (applying Iqbal to pro se civil rights complaint); Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (noting that pro se complaints "must be held to less stringent standards than formal pleadings" but that "even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct'" (internal quotation marks and citations omitted)).

### A. Civil Rights Claims

#### 1. Equal Protection Claims (Counts I and II)

In Counts I and II, Traversa alleges that the Defendants' application of the Maryland Human Relations Statute, Md. Code Ann., State Gov't § 20-101-1203 (LexisNexis 2010), violated equal protection as applied to his administrative complaint.[3] In sum, Traversa contends that the Commission intentionally delayed resolution of his complaint and ruled against him because he is Caucasian and disabled.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, § 1. An equal protection violation occurs when facially neutral laws are applied in an intentionally discriminatory manner. See Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886) ("Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."); Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (allegation that facially neutral law or policy has been applied in an intentionally discriminatory manner states claim under the Equal Protection Clause of the Fourteenth Amendment).

To make out on an equal protection claim, Traversa must first allege (i) that he has been treated differently from others with whom he is similarly situated, and (ii) that the unequal

---

[3] Traversa also alleges that the Defendants' violated his rights under the Americans with Disabilities Act (the "ADA"). Traversa cannot recover under § 1983 for a violation of the ADA. Vinson v. Thomas, 288 F.3d 1145 (9th Cir. 2002); Alsbrook v. City of Maumelle, 194 F.3d 999 (8th Cir. 1999); Bartlett v. N.Y. State Bd. of Law Examiners, 970 F. Supp. 1094, 1145 (S.D.N.Y. 1997), aff'd in part and vacated in part on other grounds, 156 F.3d 321 (2d Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999); see also Pathways Psychosocial v. Town of Leonardtown, MD, 223 F. Supp. 2d 699 (D. Md. 2002) (noting that case law "forecloses § 1983 claims for violations of the ADA").

treatment was the result of intentional or purposeful discrimination.  See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-40 (1985); Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 818-19 (4th Cir. 1995).  Traversa's Complaint fails because he has not properly alleged that the Defendants were motivated by a discriminatory intent.

The Supreme Court has recognized several factors as probative of whether a defendant was motivated by a discriminatory intent.  These factors include: (1) evidence of a "consistent pattern" of actions by the defendant disparately impacting members of a particular class of persons; (2) the historical background of the decision, which may take into account any history of discrimination by the defendant or the jurisdiction he represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures, and (4) contemporary statements by the defendant on the record or in minutes of their meetings.  See Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 266-68 (1977).

Traversa's Complaint does not include any allegations that, if proven true, would satisfy the first, second, or fourth factors identified above.  Traversa's allegation that "it is not the normal policy of the Commission to delay proceedings due to a parallel arbitration" and "[t]here is no policy in the COMAR addressing a delay of investigation for any purpose" (Am. Compl. ¶ 125) might be probative of the third factor, that the Commission made a significant departure from normal procedures.

Nevertheless, Traversa's Complaint is devoid of any allegations regarding the "specific sequence of events" underlying the Defendants' investigation and resolution of his complaint.  Rather, Traversa's claim rests on the general allegation that the Commission does not normally

delay proceedings when a parallel investigation is pending.[4] Notably, Traversa does not allege that a statute or policy required the Commission to continue its investigation while his arbitration was pending. Further, the alleged departure was hardly "significant" and does not support the conclusion that the Defendants acted with discriminatory intent.[5] Accordingly, Traversa's equal protection claims must be dismissed.

### 2. Conspiracy Under 42 U.S.C. § 1985 (Count III)

In Count III, Traversa alleges that the Defendants conspired to deny him equal protection of the law in violation of 42 U.S.C. § 1985. A claim pursuant to § 1985 must be supported "with specific facts that the defendants were motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiffs of the equal enjoyment of rights secured by the law to all." Francis v. Giacomelli, 588 F.3d 186, 196-97 (4th Cir. 2009) (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (internal quotations and alterations omitted)).

Traversa's conspiracy claim is conclusory and devoid of any specific factual allegations. See, e.g., Am. Compl. ¶ 96 ("[The Defendants] communicate[d] and conspire[d] to deny Mr. Traversa the equal protection of the laws by agreeing to allow the claim to languish for an extended period without any significant effort expended."); ¶ 224 ("Valerie McNeal and Charles Blue, did communicate and conspire to, and with Actual Malice, did deprive equal protection of equal privileges of law to Plaintiff. . . ."). Accordingly, it must be dismissed. See Simmons, 47

---

[4] Traversa compares the time for which his complaint was pending to the average time complaints were pending before the Commission during 2006 and 2007. Am. Compl. ¶¶ 40-41. These figures provide no support for Traversa's claim that the Commission departed from an official policy.
[5] Travera's conclusory allegation that "[s]tatistically speaking [his] case must be unique" (Am. Comp. ¶ 43) is unavailing. According to the facts alleged, numerous complaints could have been pending for longer periods of time than Traversa's complaint.

F.3d at 1377 (noting that the Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner").

### 3. Qualified Immunity

Assuming arguendo that Traversa stated viable claims under § 1983 and § 1985, the Defendants would nevertheless be entitled to qualified immunity for any claims arising from the decision to delay investigation of Traversa's administrative complaint. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). The main purpose of the qualified immunity doctrine is to ensure that " 'insubstantial claims' against government officials [will] be resolved prior to discovery." Anderson v. Creighton, 483 U.S. 635, 640, n.2 (1987). Therefore, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

Under the qualified immunity doctrine, the Court must determine whether the Defendants should have known that they were violating Traversa's constitutional rights. The Court must consider first whether those rights clearly existed and, if so, then whether a reasonable officer in the Defendants' positions would have appreciated that he was violating those rights. See Jackson v. Long, 102 F.3d 722, 728 (4th Cir. 1996).

In the instant case, no reasonable official could have appreciated that he was violating Traversa's rights. Because Traversa consented to the arbitration, no reasonable official could have appreciated that delaying further action on the complaint would have aggrieved Traversa.

7

Accordingly, the Defendants are entitled to qualified immunity on any claims arising from the decision to delay investigation of Traversa's Complaint.

### 4. Quasi-Judicial Immunity

Traversa also contends that Defendants McNeal, Blue, and Bell violated his civil rights by concluding that Traversa had not been subject to discrimination. Agency officials whose duties are comparable to those of judges or prosecutors are entitled to absolute "quasi-judicial" immunity when adequate procedural safeguards exist. See Butz v. Economou, 438 U.S. 478, 511-17 (1978). In determining immunity, the Court must "examine the nature of the function performed." Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (internal quotation marks and citation omitted). For example, absolute immunity applies to activities "intimately associated with the judicial phase of the criminal process," but not to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." Imbler v. Pachtman, 424 U.S. 409, 431 (1976).

In Crenshaw v. Baynerd, 180 F.3d 866 (7th Cir. 1999), the Seventh Circuit held that the Commissioners of the Indiana Civil Rights Commission (the "ICRC") were entitled to quasi-judicial immunity for declining to exercise jurisdiction over a claim.[6] The court noted that the ICRC was a quasi-judicial adjudicatory body, that the Commission members "perform duties functionally comparable to those of a judicial officer," and that the ICRC's "investigation of complaints is discretionary." Id. at 867-78.

---

[6] Other circuits, including the Fourth Circuit, have reached similar conclusions regarding the immunity of state officers who exercise adjudicatory authority. See VanHorn v. Oelschager, 457 F.3d 844 (8th Cir. 2006) (Secretary for the Nebraska State Racing Commission and its three appointed commissioners); Destek Group, Inc. v. State of New Hampshire Public Utilities Com'n, 318 F.3d 82 (1st Cir. 2003) (Commissioners of the New Hampshire Public Utilities Commission); Ostrenzski v. Siegel, 177 F.3d 245 (4th Cir. 1999) (state medical disciplinary board).

Crenshaw is on all fours with this case. Like the ICRC, the Commission has discretion to accept or reject complaints, to designate the complaint for systemic processing, to negotiate settlements, and to hold hearings. See Md. Code Regs. 14.03.01-21. Further, the Commission's decisions are subject to numerous procedural safeguards. For example, complainants have the right to take appeals from the Commission's decisions and to bring civil actions following the conclusion of the administrative process. See id. 14.03.12-14. Accordingly, the Defendants are entitled to absolute quasi-judicial immunity on Traversa's claim that they violated his civil rights by concluding that he was not disabled.

### B. Tort Claims

Traversa claims that the Defendants acted negligently in investigating his complaint and issuing the Written Finding. Traversa also claims that Defendants Blue, Bell, and Ford negligently supervised the staff members charged with investigating Taversa's complaint.

It is well established that to state a claim for negligence, a plaintiff must allege a duty owed by the defendant to the plaintiff, a breach of that duty, actual injury or loss suffered by the plaintiff, and that the injury or loss proximately resulted from defendant's breach of the duty. See, e.g., Muthukumarana v. Montgomery County, 370 Md. 447 (2002). Traversa's negligence claims must be dismissed because he cannot establish that the Defendants owed him a special duty,[7] and State personnel are immune from suit for tortious acts or omissions that are within the scope of their public duties and made without malice or gross negligence.

#### 1. Special Duty

Traversa contends that the Maryland Human Relations statute and its implementing regulations establish that the Defendants owed him a special duty. To use a statutory duty as the

---

[7] The existence of a legal duty is a question of law to be decided by the Court. Patton v. United States of America Rugby Football Union, 381 Md. 627, 636 (2004).

9

foundation for a negligence claim in Maryland, the plaintiff must "establish that he or she is a member of the class of persons the statute was designed to protect, that the injury was of the type the statute was designed to prevent, and that the statute sets forth mandatory acts clearly for the protection of a particular class of persons rather that the public as a whole." Pulliam v. Motor Vehicle Admin., 181 Md. App. 144, 169 (Ct. Spec. App. 2008) (citing Pendleton v. State, 398 Md. 447, 466-67 (2007)).

The first case in which the Maryland Court of Appeals authorized a negligence action against the state based upon a special relationship arising from a statute is Horridge v. St. Mary's County Department of Social Services, 382 Md. 170 (2004). The plaintiff in Horridge filed a complaint against the State and two social services workers, alleging that he had and his neighbor had made numerous reports of physical abuse being inflicted upon the plaintiff's minor son. Id. at 178-80. Horridge claimed that the agency failed to make a thorough investigation and take steps to protect his son, as required by law and that, as a result of the agency's errors, the plaintiff's son was beaten to death eight days after the last report was made. Id.

In Horridge, the statutes and regulations imposed specific and focused duties on the agency and required the prompt investigation of each reported incident of child abuse. See id. at 184-86 (reviewing the relevant statutes). The court held that the statute created a special duty, noting that "[t]he duty to act is mandatory; the steps to be taken are clearly delineated; and, most important, the statute makes clear in several places that the sole and specific objective of the requirement is the protection of a specific class of children." Id. at 189.

By contrast, the statute and implementing regulations at issue here are general and meant to protect the public as a whole. See Md. Code Ann., State Gov't § 20-602 (noting that it is the State's policy "to insure all persons equal opportunity in receiving employment . . . and, to that

10

end, to prohibit discrimination in employment by any person" (emphasis added)). Further, the statute and regulations impose few mandatory duties on the Commission and its staff. As discussed above, the Commission has discretion to accept or reject complaints, to administratively close complaints, to hold investigatory hearings, and to negotiate settlements. See Md. Code Regs. 14.03.01-21. The Commission's few mandatory duties are to investigate claims that are authorized and issue written probable cause findings. See State Gov't § 20-1005. These few requirements are insufficient to create duties that are enforceable in tort. See Pulliam v. Motor Vehicle Admin., 181 Md. App. 144 (Ct. Spec. App. 2008) (holding that the State "has no duty to follow a mandatory statute pertaining to the issue of drivers' licenses" when the statute was not targeted at a particular class of individuals).

### 2. Immunity

Because the Defendants owed Traversa only a public duty, the Defendants are immune from suit for acts made without malice or gross negligence. See Md. Code Ann, Cts. & Jud. Proc. § 5-522(b) (LexisNexis 2010).[8] In this context, the Maryland courts define malice as an "evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will, or fraud . . . not merely gross negligence or wanton or reckless conduct." Shoemaker v. Smith, 353 Md. 143, 163 (1999). Likewise, the courts define gross negligence as acting "with wanton or reckless disregard for the safety of others." Boyer v. State, 323 Md. 558, 580 (1991).

---

[8] Traversa's conclusory allegation that the Defendants acted outside of the scope of their employment is unavailing. Even if an employee violates a statute while performing her duties, the act is considered to be within the scope of employment if the violation occurred "incident to the performance of the duties entrusted" to the employee by the agency. Larsen v. Chinwuba, 377 Md. 92, 109 (2003).

Traversa's Complaint includes several bare allegations that the Defendants acted with malice and gross negligence. Plaintiffs who assert malice or gross negligence "are held to a high pleading standard that may not be satisfied by conclusory allegations." Swagler v. Harford Co., No. 08-2289, 2009 WL 1575324, at *4 (D. Md. June 2, 2009); see Romanesk v. Rose, 248 Md. 420, 423 (1968) ("When dealing with . . . a [gross negligence] standard, bald and conclusory allegations will not suffice; specificity is required." (internal quotation marks omitted)); Elliott v. Kupferman, 58 Md. App. 510, 528 (Ct. Spec. App. 1984) ("To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious.").

Taking the well-pleaded facts alleged in the Complaint as true, Traversa at most can establish that the Defendants failed to timely resolve his complaint and applied an incorrect legal standard in concluding that he was not disabled. These allegations suggest individual negligence and bureaucratic mismanagement. The allegations do not demonstrate, however, malice, evil intention, or wanton, wilful, or reckless disregard for human life or the rights of others. Cf. Wells v. State, 100 Md. App. 683 (Ct. Spec. App. 1994) (holding that allegations that state agency and city social service personnel failed to assure that child abuse complaints were properly investigated did not state claim for gross negligence). Accordingly, the Defendants are entitled to immunity, and Traversa's negligence claims must be dismissed.

**III.    Conclusion**

For the reasons stated herein, the Court will, by separate Order of even date, GRANT the Defendants' Motion.  The Clerk is DIRECTED to CLOSE the case.


Dated this  17th  day of   June   , 2010 .              /s/             
                                                     Benson Everett Legg
                                                     United States District Judge